# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nᵒ 06-CV-6644 (JFB) (ARL)

———————————

ANTHONY MARRO,

Plaintiff,

VERSUS

R. JAMES NICHOLSON, AS SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS,

Defendant.

———————————

MEMORANDUM AND ORDER
March 12, 2008

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Anthony Marro ("plaintiff" or "Marro") brought this action on December 15, 2006 against his former employer, the Department of Veterans Affairs ("defendant" or the "VA"). The action has two components. First, plaintiff alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, in this lawsuit, Marro alleges that the VA violated Title VII by terminating him in retaliation for various discrimination complaints he has filed with the Equal Employment Opportunity Commission (the "EEOC") over the years against supervisor Robert S. Schuster ("Schuster"), as well as a 2005 gender-based discrimination complaint. Second, pursuant to 5 U.S.C. § 7703, plaintiff

asks the Court to set aside the decision of the Merit Systems Protection Board (the "MSPB") affirming plaintiff's termination. In particular, the MSPB concluded that Marro's termination was justified because he had received, opened, and forwarded sexually explicit material using the VA's computer system and, thus, violated defendant's policies regarding appropriate computer use.

Defendant now moves for summary judgment on all claims, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. At the same time, plaintiff cross-moves for summary judgment on the claims related to the decision of the MSPB. For the reasons set forth below, after reviewing the discrimination claim *de novo* and the non-

discrimination claim on the administrative record, the Court grants defendant's motion in its entirety, and therefore denies plaintiff's cross-motion in its entirety.

## I. FACTS[1]

The Court has taken the facts described below from the parties' depositions, affidavits, exhibits, and respective Local Rule 56.1 statements of facts, as well as from the MSPB administrative record submitted by the parties. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

## A. Plaintiff's Employment History With Defendant

Marro is a former employee of the VA, where he served as a Budget Analyst at the VA Hospital in Northport, Long Island (the "VA-Northport"). (Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1") ¶ 1.) Plaintiff began working at the VA-Northport in October 1985. (Marro Dep. at 12:13-17.)

### (1) EEOC Activity

Marro filed approximately six EEOC complaints in the course of his employment at the VA. (Marro Dep. at 49:12-15.) Facts relating to the complaints relevant to the instant motion are set forth below.

### a. Schuster

Between approximately 1982 or 1983 to 1991 or 1992, Schuster served as Chief Fiscal Officer at the VA-Northport and, in that capacity, was Marro's supervisor. (Schuster Dep. at 5:17-6:12.) In 1991, plaintiff filed an EEOC complaint against Schuster and another of Marro's supervisors alleging that they had failed to accommodate a psychiatric disability Marro suffered after a car accident. (Marro Dep. at 44:8-47:13.)

Further, also in approximately 1991, Marro filed an EEOC complaint against Schuster's secretary for discrimination arising from a "breach of security," *i.e.*, the secretary allegedly accessed plaintiff's computer. (Marro Dep. at 48:2-14.) Marro could not recall the discrimination component of this complaint, but stated with respect to the alleged breach that "I think Mr. Schuster put her up to it because she was Mr. Schuster's secretary, and that they want – I am not really sure what it is now." (Marro Dep. at 48:8-14.)

Marro testified that, subsequently, "Mr Schuster – because he seen that there was a pattern of EEO complaints that I was filing, he started making life very, very difficult for me, to the point that he was even making it difficult to perform my duty, my work, and then what he was doing, he was holding information so I couldn't complete certain tasks." (Transcript of MSPB Hearing ("Hearing Tr.") at 227:4-14.)

Schuster was not assigned to the VA-Northport from 1993 to 2003. (Def.'s 56.1 ¶ 19.) Marro made no complaint against Schuster after Schuster returned to the VA-Northport in 2003. (Def.'s 56.1 ¶ 21.) Schuster never mentioned Marro's prior

---

[1] Where only one party's 56.1 Statement is cited, the facts are taken from that party's 56.1 statement, and the other party does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

EEOC activity to plaintiff when Schuster returned. (Marro Dep. 51:25-52:2-6.)

b. Nancy Mirone

Nancy Mirone began working at the VA-Northport, as its Fiscal Officer, in 2001. (Mirone Dep. at 4:13-16.) Mirone was Marro's supervisor. (Mirone Dep. at 12:2-4.) Plaintiff's EEOC complaints in 2002, 2004, and 2006[2] were only against Mirone, and not Schuster. (Def.'s 56.1 ¶ 20.) However, Marro has stated that he was "sure" Mirone knew of his earlier EEOC complaints against Schuster and other supervisors "because I am sure they are briefed when they come to – when they take on a new position." (Marro Dep. 51:15-18.) He stated that such briefings were "the normal procedures." (Marro Dep. 51:20.) However, Marro also stated that Mirone never mentioned plaintiff's prior EEOC activity, *i.e.,* the activity related to Schuster and plaintiff's other supervisors, to plaintiff. (Marro Dep. 51:22-24.)

Marro testified that he had "difficulties" in his relationship with Mirone "all the time." (Hearing Tr. at 233:9-11.) For instance, when plaintiff returned from disability leave, Mirone had emptied out the contents of plaintiff's office. (Hearing Tr. at 233:13-15.) Plaintiff no longer had a private office and was, instead, placed in an area that was "heavily trafficated" [sic]. (Hearing Tr. at 235-36.) Mirone stripped Marro of certain of his duties, including making budget projections and attending meetings. (Hearing Tr. at 237:12-19.) According to plaintiff, she would also "ridicule" Marro in front of the staff. (Hearing Tr. at 239:7-8.)

In 2004, Marro filed an EEOC complaint against Mirone allegedly because "she was trying to frame [plaintiff] with telephone abuse." (Marro Dep. 40:15-19.) Specifically, Mirone had informed Marro that he had incurred five or six hundred dollars in personal phone charges, but plaintiff contended that they were attributable to telephone calls he made to physicians in relation to his wife's illness. (Marro Dep. 40-42.) Marro also suggested that "a lot of those phone calls didn't come from me, though, because my phone – it was in the middle of a room and my phone would be turned backwards when I came back from lunch." (Marro Dep. 42:18-22.) The EEOC complaint arising from the charges of telephone abuse alleged retaliation for prior EEOC complaints. (Marro Dep. 43-44.)

In 2005, Marro filed an EEOC complaint against Mirone because he was not selected for a promotion to a supervisory position. (Def.'s 56.1 ¶¶ 2-3.) Marro testified that rather than choose him for the supervisory position, Mirone hired her "close friend," who was female. (Hearing Tr. at 20-23.) Further, according to plaintiff, "most of the people that were being hired during that period were females." (Hearing Tr. at 242:23-24.) The 2005 EEOC complaint alleged gender discrimination and acts of reprisal for prior EEOC activity. (Def.'s 56.1 ¶ 3.) Marro filed the 2005 EEOC complaint informally in November 2005, and formally on December 22, 2005. (Def.'s 56.1 ¶ 3; Exh. M.)

B. The Investigation and Marro's Termination

On or about December 19, 2005, the VA commenced an investigation of Marro. (Def.'s 56.1 ¶ 4.) The investigation was conducted by Henry F. Schemitz

---

[2] This reference to a 2006 EEOC complaint appears to pertain to plaintiff's December 2005 complaint against Mirone, discussed *infra*, which was amended in 2006. (Def.'s 56.1 ¶ 6.)

3

("Schemitz"), the Chief of Police at the VA-Northport, and Detective Paul Romano ("Romano"). (Def.'s 56.1 ¶ 16.) Schemitz testified that the investigation of Marro began when Schemitz found sexually-explicit email between plaintiff and another employee of the VA-Northport, Joseph Nieves ("Nieves") in the course of investigating Nieves for a separate violation. (*See* Schemitz Dep. at 25:4-26:15.)[3]

Plaintiff was placed on "non-duty" status with pay effective February 8, 2006 while the pending investigation proceeded. (Def.'s 56.1 ¶ 5.) Mirone proposed removal of Marro by notice dated February 24, 2006. (Pl.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶ 2.) The Notice of Proposed Removal contained two charges against plaintiff (the "charges"). (Pl.'s 56.1 ¶ 3.)

The first of the charges stated as follows:

> You are charged with the inappropriate use of a government computer system in that you failed to follow a policy in accordance with the Rules of Behavior for VISTA and PC LAN, and VA Directive 6001, from 2000 through 2005 by receiving and opening, and forwarding sexually explicit material on your VA PC for the years 2000 to 2005.

(*Id.* ¶ 4.)

The second charge stated as follows:

> You are charged with the inappropriate use of a government computer system in that you failed to follow policy in accordance with the Rules of Behavior for VISTA and PC LAN, and VA Directive 6001, and IRM-4, "Use of the V.A. Electronic Mail System" by your inappropriate personal use of your e-mail account.

(Pl.'s 56.1 ¶ 5.) Mirone based this Notice of Proposed Removal on conversations with Marro, Aaron Fields ("Fields"), Schemitz, and Sandra Gantz ("Gantz"). (Pl.'s 56.1 ¶ 16.) Fields was the VA's attorney in the MSPB hearing in this matter, and Gantz worked in the Personnel Department. (Pl.'s 56.1 ¶¶ 15-16.) No record was made of any of these discussions, except for the conversation with Marro. (Pl.'s 56.1 ¶ 17.)

In particular, Mirone's conversation with Marro took the form of a "fact-finding" on February 8, 2006 (the "fact-finding"). (Pl.'s 56.1 ¶ 22.) At the fact-finding, Mirone did not show plaintiff the emails or other electronic material in question.[4] (Pl.'s 56.1 ¶ 23.) Although Mirone recalled Marro denying any knowledge of receiving, opening, or forwarding sexually explicit or pornographic material through his government email account, she never undertook any follow-up after these denials. (Pl.'s 56.1 ¶ 24.)

---

[3] Although neither party addresses the genesis of the investigation against Marro in its Statement of Undisputed Facts, the record contains no evidence suggesting that the investigation began in any way other than through the separate investigation of Nieves.

[4] This Court hereinafter refers to this material as "Exhibit 4T," which was the designation the material received in connection with plaintiff's MSPB hearing.

On March 6, 2006, Marro amended the 2005 EEOC Complaint to include two additional complaints of discrimination based on his placement on non-duty status and the Notice of Removal. (Def.'s 56.1 ¶ 6.)

Schuster removed Marro by notice dated March 23, 2006, effective April 11, 2006. (Pl.'s 56.1 ¶ 6.) Schuster was the supervisor who terminated plaintiff. (Def.'s 56.1 ¶ 14.)

Neither Mirone (the "proposing official") nor Schuster (the "deciding official") has ever reviewed Exhibit 4T. (Pl.'s 56.1 ¶ 9.)

## C. Proceedings Before the MSPB

Plaintiff challenged his removal by filing an appeal with the MSPB, citing retaliation for prior EEOC activity. (Def.'s 56.1 ¶ 8.) On August 10, 2006 and August 11, 2006, an administrative law judge ("ALJ") conducted a hearing on this appeal (the "hearing"). (Def.'s 56.1 ¶ 9.)

The ALJ upheld Marro's removal and rejected his discrimination claim in the Initial Order, dated August 25, 2006 (the "Initial Order"). (Def.'s 56.1 ¶ 10.)

By Final Order dated November 16, 2006 (the "Final Order"), the MSPB denied plaintiff's appeal of the ALJ's decision. (Def.'s 56.1 ¶ 11.)[5]

## II. PROCEDURAL HISTORY

The VA submitted the instant motion on October 22, 2007. Marro submitted his

_____

[5] The ALJ's Initial Order "became the final decision of the Board upon denial of review." *Pierce v. Dep't of the Navy*, No. 2007-3275, 2007 U.S. App. LEXIS 25961, at *4 (Fed. Cir. Nov. 7, 2007).

opposition and cross-motion on November 23, 2007, but did not address the section of the VA's motion requesting summary judgment on the Title VII claim.[6] The VA

_____

[6] Indeed, Marro's counsel conceded at oral argument that plaintiff failed to address defendant's motion for summary judgment on the Title VII claim in any of the legal memoranda plaintiff submitted to the Court. At oral argument, in response to an inquiry by the Court regarding this lapse, Marro's counsel stated that he did not brief the Title VII issue because if plaintiff succeeded in persuading the Court to set aside the MSPB decision, plaintiff would essentially be entitled to the same damages as he would if he prevailed on the Title VII claim. The Court notes as a threshold matter that, because plaintiff's opposition papers did not address defendant's motion for summary judgment on the Title VII claim, the claim could be deemed abandoned and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614 (WHP), 2006 U.S. Dist. LEXIS 7368, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI), 2005 U.S. Dist. LEXIS 22444, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00-CV-9827 (MBM), 2003 U.S. Dist. LEXIS 166, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in

submitted a reply brief on its own motion and opposed plaintiff's cross-motion on December 21, 2007. Marro submitted a reply brief on his cross-motion on January 2, 2008. The Court held oral argument on February 15, 2008.

## III. STANDARD OF REVIEW

As set forth below, the Court applies separate standards of review to defendant's motion for summary judgment on the Title VII claim and plaintiff's appeal of his MSPB decision.

### A. Title VII Claim

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."

opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default."). However, in the exercise of its discretion, the Court will not deem the claim abandoned; rather, the Court will address the claim on the merits and finds this claim fails to survive summary judgment for the reasons set forth below.

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

## B. MSPB Appeal

"Pursuant to the provisions of the Civil Service Reform Act of 1978, 5 U.S.C. § 7701 *et seq.* (the "CSRA"), qualified federal employees may appeal certain adverse employment decisions to the [MSPB]. If the case is a 'mixed case,' in other words involves an appeal from an ordinary personnel action coupled with an allegation that the action was discriminatory, the CSRA sets forth special procedures for review by a federal court." *Murray v. U.S. Dep't of Justice*, 821 F. Supp. 94, 101

(E.D.N.Y. 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993); *see also Fernandez v. Chertoff*, 471 F.3d 45, 53 (2d Cir. 2006) ("[A] 'mixed' case involves both a claim of discrimination *and* a challenge to other types of prohibited personnel actions taken by the agency that are ultimately appealable to the [MSPB].") (emphasis in original). Here, because Marro's appeal to the MSPB not only challenged his removal, but also alleged that his termination was an act of discriminatory retaliation, this is a mixed case subject to the aforementioned "special procedures." In particular, "[w]hile petitions for judicial review of MSPB actions are ordinarily filed in the Court of Appeals for the Federal Circuit and reviewed on the administrative record, 5 U.S.C. §[§] 7703(b)(1), 7701(c)(1)-(3), in a 'mixed case' judicial review of the final Board order lies in the district court. 5 U.S.C. § 7703(b)(2). The court must review the discrimination claim *de novo*, 5 U.S.C. § 7703(c), and the non-discrimination claim on the administrative record." *Murray*, 821 F. Supp. at 101; *see also Hamilton v. Dep't of Labor*, 04 Civ. 9605, 2006 U.S. Dist. LEXIS 12818, at *9 (S.D.N.Y. Mar. 23, 2006) ("In cases presenting discrimination and nondiscrimination claims, known as 'mixed' cases, 'the district court may review the discrimination claim de novo, and . . . the district court may review the nondiscrimination claims in the manner of review by the Federal Circuit Court of Appeals, i.e., on the administrative record.") (quoting *Ugarte v. Johnson*, 40 F. Supp. 2d 178, 181 (S.D.N.Y. 1999)). Thus, the Court will review Marro's retaliation claim raised before the MSPB *de novo*, and the challenge to his removal on the administrative record.

## IV. DISCUSSION

### A. Title VII Claim

For the reasons set forth below, after conducting a *de novo* review of the discrimination claim, the Court grants summary judgment to defendant on this claim.

### (1) Legal Standard

Title VII prohibits an employer from firing an employee in retaliation for having made a charge of discrimination. 42 U.S.C. § 2000e-3(a); *see also* N.Y. Exec. Law § 296(1)(e); N.Y.C. Admin. Code § 8-107(7). "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" *Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003) (internal citations omitted).

Retaliation claims are governed by the burden-shifting framework set out by the Supreme Court in *McDonnell Douglas*. 411 U.S. 792 (1973); *Terry*, 336 F.3d at 141 (2d Cir. 2003). To establish a *prima facie* case of retaliation, a plaintiff must show (1) he engaged in a protected activity; (2) defendant was aware of that activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir. 1998); *see Terry*, 336 F.3d at 141. The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas's* minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze

the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

### (2) Application

Here, as set forth below, the Court finds that Marro has failed to establish a *prima facie* case of retaliation because he has produced no evidence to support a causal connection between the filing of his EEOC complaints and his termination. Moreover, even assuming *arguendo* that plaintiff could establish a *prima facie* case, the VA is entitled to summary judgment because defendant has set forth legitimate, non-retaliatory reasons for plaintiff's termination, and the record contains no evidence of a material issue of fact relating to whether defendant acted in retaliation for the filing of plaintiff's EEOC complaints.[7] Specifically, although plaintiff filed no

---

[7] Plaintiff's complaint does not identify the particular EEOC complaints for which he claims retaliation in the instant action. (*See* Compl. ¶ 93.) Moreover, his opposition papers do not shed light on this issue because, as stated *supra*, he wholly failed to address the VA's motion for summary judgment on the Title VII claim. At his deposition, however, Marro specifically alleged that his termination was retaliatory based on "Mr. Schuster and my prior EEO complaints against him." (Marro Dep. at 75:6-11.) Even assuming that Marro's retaliation claim is based on his 2005 complaint against Mirone – which he did not formally file until after the VA began the investigation that ultimately led to his termination – this claim would fail, for the reasons discussed *infra*.

opposition to defendant's motion for summary judgment on the Title VII claim, the Court has reviewed the submissions of the parties, including Marro's deposition and the extensive administrative record of his MSPB appeal, to determine if any evidence exists that raises an issue of fact regarding a pretextual motive on the part of the VA, and the Court found no such evidence. As outlined below, the record clearly demonstrates that plaintiff violated the VA's policies regarding sexually explicit electronic material. Moreover, the record contains no evidence that would allow a reasonable inference that defendant's actions were motivated by retaliation.

### a. The *Prima Facie* Case: Lack of Causation

The VA argues that Marro has failed to establish a *prime facie* case of retaliation because he has not shown a causal connection between his protected activity, *i.e.,* filing EEOC complaints, and his termination. For the reasons set forth below, the Court agrees that plaintiff has not shown this connection and, thus, has failed to establish a *prima facie* case of retaliation under *McDonnell Douglas.*

A plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (holding that a causal connection may be "established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory

animus"). Where there is no direct evidence of retaliatory animus or a showing of disparate treatment of fellow employees who engaged in the same conduct, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Gordon v. N. Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Cifra v. GE*, 252 F.3d 205, 217 (2d Cir. 1991) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.,* No. 03-CV-3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55-*56 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g., Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. N.Y. State Dep't of Corr. Serv*., 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (holding abusive acts within one month of receipt of deposition notices may be retaliation

for initiation of lawsuit more than one year earlier).

Here, as set forth below, the Court finds that the record contains no evidence of retaliatory animus – either direct or indirect – and, moreover, that plaintiff's termination was too distant in time from his protected activity to otherwise give rise to causation.

### 1. Lack of Direct Evidence

The Court has carefully reviewed the record, including plaintiff's deposition and MSPB testimony, and finds no direct evidence of retaliatory animus on the part of the VA, including employees Schuster and Mirone. Instead, the record contains conclusory statements by Marro that vaguely purport to show such animus. For instance, the VA specifically asked Marro at his deposition whether Schuster took any retaliatory acts against Marro since Schuster returned to the VA-Northport. The following dialogue ensued:

> Q: Since Mr. Schuster came back to Northport VA in 2003, are you claiming he took any retaliatory acts against you?
> A: Indirectly, yes.
> Q: Can you describe that?
> A: Well, he used Ms. Mirone for that.
> Q: For specifically what?
> A: That he would make sure that I will not get ahead.
> Q: How did he do that?
> A: He told somebody else and somebody else told me.
> Q: Can you describe what acts he took to make sure you did not get ahead?

A: Well, he tried to keep me down as much as possible. In other words, since he was still head of the network, he would make sure that – actually even Mr. Saunders. He went through Mr. Saunders and he told Mr. Saunders that management did not like me. He didn't go as far as telling me that it was Mr. Schuster that didn't like you. He just told me management didn't like me. Who was management? Mr. Schuster.
Q: Mr. Saunders told you this?
A: Yes.
Q: When did he tell you that?
A: Back in '95, '96, maybe '97.

(Marro Dep. at 86-87.) As a threshold matter, such conclusory statements, without more, will not defeat a motion for summary judgment. *See Forsyth v. Fed'n Employment and Guidance Serv.,* 409 F.3d 565, 573-74 (2d Cir. 2005); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997) ("[A] plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."); *see also Turner v. Davidson/Gilmour Pipe Supply,* No. 04-CV-3278 (ARR), 2006 WL 1652613, at *9 (E.D.N.Y. June 14, 2006) (concluding that plaintiff's conclusory allegations of discrimination were insufficient to sustain a Title VII claim).

In any event, the Court has carefully reviewed the record – and, in particular, the exhibits plaintiff proffered in his "Statement of Disputed Facts" to support the assertions that "[t]here is a long history of hostility toward and even abuse of Mr. Marro by Mr. Schuster," (Statement of Disputed Facts ¶ 159), and that "Schuster has a history of attempting to impede Mr. Marro's career advancement and to isolate Mr. Marro" (*id.* ¶ 176) – in order to determine

whether the record contains any direct evidence of retaliatory animus. However, as set forth below, the Court's thorough review of these exhibits – in the context of to the record as a whole – evinces no direct evidence of the retaliatory animus Marro vaguely described at his deposition.

For instance, plaintiff points to a Report of Contact Marro submitted on August 19, 1991 and claims that it illustrates "Schuster working in tandem with Mr. Marro's supervisor to taunt Mr. Marro." (Pl.'s Disputed Facts ¶ 159.) In this Report of Contact, Marro described an incident in which Schuster walked into a room where Marro and his supervisor, Mr. Bugno ("Bugno"), were present. Bugno was in the course of criticizing Marro's work on a Budget Plan, and Marro disputed the validity of this criticism. When Schuster walked into the room, he did not acknowledge Marro and, instead told Bugno that he had done a good job on the Budget Plan. In summarizing the incident, Marro stated: "Again [Schuster] found another way to indirectly harass me in my presence. From this I concluded that they both would continue to taunt, trap and harass me in every way possible to lead to the downfall of my Fiscal career." (*See* Exh. K.)

The Court is aware that verbal comments may constitute direct evidence of retaliation when made by a decision-maker in the adverse employment action, where there is a close nexus between the comments and the action. *See Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (finding discriminatory motive where comments were made to plaintiff "on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process"); *Howe v. Town of Hempstead*, No. 04 Civ. 0656, 2006 U.S. Dist. LEXIS 78927,

at *22 (E.D.N.Y. Oct. 30, 2006) ("[Discriminatory] comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action."). Here, however, the purportedly negative comments against Marro were made by Bugno approximately fourteen years before plaintiff's termination, in which Bugno is not alleged to have played any role. Thus, the comments cannot constitute direct evidence of retaliatory animus. *See, e.g., Beshty v. GM*, 327 F. Supp. 2d 208, 213 (W.D.N.Y. 2004) ("[Employee's] alleged remark was made by someone who had no involvement in plaintiff's termination, months before the termination occurred. That is not enough to give rise to a genuine issue of material fact."); *Venti v. EDS,* 236 F. Supp. 2d 264, 277 (W.D.N.Y. 2002) (holding that coworker's statement that plaintiff was "too old" to be pregnant did not support inference of discrimination because it was not connected to employer's decision to terminate and speaker had no input regarding termination decision); *Douglas v. Dist. Council 37 Mun. Emples. Educ. Fund Trust*, 207 F. Supp. 2d 282, 291 (S.D.N.Y. 2002) (holding that, ambiguous and abstract comments by non-decisionmakers were insufficient to raise inference of discrimination); *Georgy v. O'Neill,* No. 00 Civ. 0660, 2002 WL 449723, at *6 (E.D.N.Y. Mar. 25, 2002) (holding that alleged reference to national origin by non-decisionmaker six months prior to plaintiff's termination was "the kind of isolated stray remark insufficient, without more, to raise an inference of discrimination and defeat summary judgment"); *Kotlowski v. Eastman Kodak Co.*, 922 F. Supp. 790, 801 (W.D.N.Y. 1996) (holding that stray comments by co-workers without supervisory control over plaintiff cannot rebut defendant's nondiscriminatory reason for termination); *Corcoran v. Gab Bus. Servs.*, *Inc.,* 723 F. Supp. 966, 968-69 (S.D.N.Y. 1989) (holding plaintiff failed to meet *de minimis* burden where he introduced only two isolated comments made by individuals who had no involvement in his termination).

Moreover, even assuming *arguendo* that Schuster's complimenting Bugno in Marro's presence was a means of harassing Marro, that this incident took place in 1991 – about fourteen years before Marro's termination – vitiates any nexus the harassment may have to this termination. *See, e.g., Gorman-Bakos*, 252 F.3d at 554; *Del Franco v. N.Y. City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 536 (E.D.N.Y. 2006) (finding no connection where three months elapsed between alleged discriminatory statements and termination); *Argueta v. N. Shore Long Island Jewish Health Sys., Inc.,* No. 01 CV 4031 (JG), 2003 WL 22670915, at *9 (E.D.N.Y. Nov. 6, 2003) ("Though it is unclear when some of the remarks were made, the Miami remark was made in August 1999. . . . more than five months before the February 10, 2000 decision to fire [plaintiff]. [Plaintiff] cannot defeat summary judgment based on these stray remarks, as she has failed to establish a nexus between them and North Shore's decision to fire her.") (citation omitted).[8]

_____

[8] For similar reasons, plaintiff's reliance on Exhibits J, T, and BX is also unavailing. Exhibit J is another Report of Contact, dated August 14, 2001, in which plaintiff makes conclusory allegations that Schuster prevented Bugno from providing Marro certain data necessary to create a Budget Plan. (Exh. K.) Exhibit T reflects a union official criticizing Bugno in 2003 for "nitpicking" at plaintiff. (Exh. T.) Schuster is not even mentioned in Exhibit T. As discussed *supra* with respect to Exhibit K, the Court cannot discern evidence of retaliatory animus on the part of Schuster from Marro's alleged problems with Bugno. The record does not contain a scintilla of evidence to support such a connection.

In sum, the Court concludes that the record reflects no direct evidence of retaliatory animus in connection with plaintiff's termination.

## 2. Lack of Circumstantial Evidence

The Court also finds that the record evinces no circumstantial evidence of retaliatory animus. Specifically, although plaintiff's "Statement of Disputed Facts" cites certain exhibits purportedly showing that employees similarly situated to Marro were treated differently from him, the Court has carefully considered these exhibits, in the context of the record as a whole, and finds no evidence of disparate treatment that could give rise to causation.

Again, plaintiff made vague and conclusory statements in his deposition that similarly situated employees were treated differently from him:

> Q: Other than Mr. Nieves, are you aware of any other employees that were charged with misuse of a computer?
> A: Based on what I hear from other people – this is hearsay, okay? From what I understand,

there was – when I reviewed certain files, I seen, I believe it was Bernie Frederich and Kamii Bejen. . . .
> Q: What is your understanding with regard to those two employees?
> A: I guess it was the same, the same situation or maybe a little bit different. I am not really sure. I am just guessing at this point.

(Marro Dep. 77:4-21.) For the same reasons stated *supra* with respect to Marro's conclusory allegations of retaliatory animus, these admittedly unsupported allegations of disparate treatment do not give rise to an issue of material fact regarding this treatment.[9]

Moreover, the exhibits to which plaintiff points in his "Statement of Disputed Facts" are similarly unavailing. First, plaintiff points to certain exhibits relating to the misuse of computers by two other VA employees – but neither misused the computer in connection with sexually explicit or pornographic material. (*See* Exhs. F, AJ.) While the Second Circuit has not confronted the question of whether employees that generally misuse the computer are similarly situated to those who use a computer in connection with sexually explicit or pornographic material, two other district courts have, including one within the Second Circuit. Both courts found that such employees are not similarly situated and, thus, cannot provide the basis for a disparate treatment argument. *See Trnka v. Biotel Inc.*,

---

Exhibit BX, on the other hand, consists of an email exchange in 1991 between Schuster and Cheeseman, in which Schuster criticizes the conduct of the EEOC investigator handling Marro's complaint against Schuster. Schuster claims in his email that the investigator was biased in favor of Marro and generally did not understand the EEOC process. (*See* Exh. BX.) Even assuming *arguendo* that this email reflected animus toward Marro on the part of Schuster, the email's fourteen-year old provenance – taken in the context of the record as a whole – negates any inference of retaliatory animus, as discussed *supra*.

---

[9] In any case, the record suggests that the employees to which Marro specifically referred were both terminated. (*See* Exhs. AJ, AK.)

No. 07-1206, 2008 U.S. Dist. LEXIS 2028, at *15 (D. Minn. Jan. 9, 2008) ("Trnka first argues that other employees used company e-mail for personal use and to distribute jokes, but that those employees were not terminated. In other words, she argues that 'similarly situated' employees were treated differently from her. Yet, Trnka's employment was terminated not only because she used e-mail to send jokes and personal messages, but also because she sent *sexually inappropriate* messages from her work computer. She has proffered no evidence indicating that other employees were using their work e-mail to send sexually explicit messages. Accordingly, she has failed to identify any employees who were 'similarly situated to her.'") (emphasis in original); *LeViness v. Bannon*, No. 3:99CV01647, 2001 U.S. Dist. LEXIS 20593, at *8 (D. Conn. Dec. 7, 2001) (finding employees not similarly situated where plaintiff was "accused of downloading stock quotations, shop-at-home services and lewd photographs" and allegedly similar employees were "accused of downloading pornography") (quotation marks omitted); *cf. Sylvie v. City of Dallas Tex.*, No. 03-10007, 2003 U.S. App. LEXIS 18545, at *7 (5th Cir. Sept. 8, 2003) (denying summary judgment "in light of plaintiff's summary judgment evidence that 24 computers in the same department showed access to pornographic sites although the employees using those computers were not disciplined. . . ."). The Court finds the reasoning of these other district courts persuasive and, thus, finds as a matter of law that the employees described in Exhibits F and AJ are not similarly situated to plaintiff and, thus, do not provide circumstantial evidence of retaliation.[10]

_____

[10] Marro also claims that a particular "employee with personnel related responsibilities was permitted to use, unfettered and without disciplinary action, government e-mail for personal reasons." (Pl.'s

### 3. Timing

In addition, as set forth below, the Court finds that the temporal proximity between the complaints against Schuster and Marro's termination is so vastly attenuated that it defeats any causal connection.[11] Marro's last EEOC complaint against Schuster was in 1991, and plaintiff was terminated in 2005. This fourteen-year period between plaintiff's protected activity and termination is about thirteen years and ten months longer than the period courts in the Second Circuit allow to give rise to a causal connection for retaliation. *See, e.g., Ruhling v. Tribune Co.*, No. 04 Civ. 2430 (ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (finding that "a

_____

Disputed Facts ¶ 167.) In support of this proposition, plaintiff cites Exhibit N, which consists of printouts of email sent by a Northport-VA employee. (Exh. N.) Including in these printouts are emails that also appeared in Exhibit 4T. However, because Exhibit N does not include anything remotely resembling the various graphic and explicit photographs and videos contained in Exhibit 4T, the Court does not find that this employee was similarly situated to plaintiff. Moreover, the record contains no evidence that this employee "was permitted" to use her email or went "without disciplinary action." These, again, are conclusory statements that cannot create an issue of material fact regarding Marro's purported disparate treatment.

[11] Again, Marro has specifically alleged that his termination was retaliatory based on "Mr. Schuster and my prior EEO complaints against him," (Marro Dep. at 75:6-11), as opposed to plaintiff's more recent complaints against Mirone, including the 2005 Complaint. However, even assuming *arguendo* that Marro based his claim on the complaints against Mirone, including the more recent 2005 Complaint, this claim would still fail for the reasons discussed *infra*.

14

passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *Cunningham v. Consol. Edison Inc*, No. 03-CV-3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (same); *Hussein v. Hotel Employees & Rest. Union, Local 6*, No. 98 Civ. 9017 (SAS), 2002 WL 10441 (S.D.N.Y. Jan. 3 2002) (finding that the passage of more than two months defeats any retaliatory nexus); *Ponticelli v. Zurich Amer. Ins. Group*, 16 F. Supp. 2d 414, 436 (S.D.N.Y.1998) (finding that a "two-and-a-half month[]" interval "is hardly the close proximity of time . . . for allowing a plaintiff to establish the 'causal connection' element") (citation omitted); *see also Hollander v. Amer. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (holding three and a half months insufficient); *Yarde*, 360 F. Supp. 2d at 562 ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y 2003) ("[A] period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related."); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").

Taking into account the circumstances of this case – including the lack of any direct or indirect evidence of retaliatory animus on the part of Schuster at any time during the last fourteen years – and considering the record as a whole, the Court therefore finds as a matter of law that too much time elapsed between plaintiff's protected activity and his termination to give rise to causation. *See Bogdan v. N.Y. City Transit Auth.*, No. 02 Civ. 09587, 2005 U.S. Dist. LEXIS 9317, at *22 (S.D.N.Y. May 17, 2005) (granting summary judgment on retaliation claim where plaintiff was suspended seven months after filing complaint because "[c]ourts are reluctant to infer retaliation where an adverse action takes place long after the filing of a charge, and the Second Circuit has held that three months can be too long a period to infer a causal relationship").[12]

In sum, the Court finds that Marro has failed to make a *prima facie* showing of retaliation under *McDonnell Douglas*.

b. Pretext

Even assuming *arguendo* that Marro had succeeded in making a *prima facie* showing of retaliation under *McDonnell Douglas*, the VA has set forth a legitimate, non-discriminatory reason for terminating plaintiff: his commission of the charges, described *supra*, related to inappropriate

---

[12] Marro apparently attempts to address this timing issue by pointing out that Schuster was aware of Marro's EEOC complaints against Mirone, including the 2005 Complaint. (*See* Pl.'s Statement of Disputed Facts ¶ 142.) The Court agrees that the record demonstrates Schuster's awareness of these subsequent complaints. For example, by letter dated December 21, 2005, the VA's Office of Resolution Management informed Schuster of this complaint. (Exh. AS.) Moreover, by letter dated February 6, 2006, the Office of Resolution Management informed Schuster that the complaint had been dismissed in part and accepted in part, and instructed that "[a]dvanced preparation for the investigation should begin as soon as possible." (Exh. AR.) However, because Marro explicitly alleges that his termination was in retaliation for EEOC activity against Schuster – and not Mirone – the Court cannot discern any significance in Schuster's awareness of plaintiff's EEOC complaints against Mirone.

material on his computer system. Thus, the Court proceeds to consider whether this legitimate reason was merely a pretext for discrimination. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) ("To defeat [defendant's] motion for summary judgment, [plaintiff] was obliged to produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.") (citation and quotation marks omitted). For the reasons set forth below, the Court finds that plaintiff has failed to provide any evidence from which a reasonable jury could conclude that the given reason for his termination was pretextual.

The Court has carefully reviewed the record and has found no evidence based on which a reasonable trier of fact could find that Marro was terminated in retaliation for his EEOC complaints against Schuster. As described *supra*, plaintiff offers nothing more than conclusory allegations in his complaint, deposition, and MSPB testimony – with no basis in fact – that he was retaliated against and, thus, he can point to no evidence that creates a genuine issue of material fact for trial. *See Winkfield v. City of New York*, No. 97-CV-2183 (HB), 1999 U.S. Dist. LEXIS 19193, at *14 (S.D.N.Y. Dec. 14, 1999) ("[P]laintiff has failed to come forward with any evidence whatsoever and relies on conclusory allegations and his own belief alone. That's just not enough.") (citing *Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996) (holding summary judgment properly granted on her retaliation claim where plaintiff failed to put forth any evidence other than own personal belief that defendant's articulated nondiscriminatory reason was pretextual)); *see also Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2003) (holding that a first amendment retaliation claim cannot be based on "conclusory assertions of retaliatory motive"; rather, "[plaintiff] must produce 'some tangible

proof to demonstrate that [his] version of what occurred was not imaginary'") (quoting *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999)); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (holding that a party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful"); *Carey*, 923 F.2d at 21 (holding that "bald assertion[s], completely unsupported by evidence" cannot defeat summary judgment). The record, taken as a whole, clearly reflects that Marro last filed a complaint against Schuster years before plaintiff's termination, which took place because Marro violated VA policy regarding sexually explicit electronic material. In fact, as discussed *infra*, there was overwhelming evidence that Marro violated this policy. Because the record thus presents no material issue of fact regarding Schuster's motive, the Court finds that summary judgment is appropriate in this case. *See Anderson v. Idearc Media Services-West, Inc.*, No. 3:06-CV-1461-L, 2007 U.S. Dist. LEXIS 80713, at *14-*16 (N.D. Tex. Oct. 30, 2007) (granting summary judgment to employer who fired plaintiff "due to his violation of [defendant's] Code of Conduct, by using his company computer to send sexually explicit e-mails and to access sexually explicit internet chat sites" because plaintiff provided no evidence of pretext); *Strycharz v. Verizon*, No. 01 Civ. 1050, 2002 U.S. Dist. LEXIS 24449, at *8 (S.D.N.Y. Dec. 19, 2002) ("The record is clear that Strycharz was dismissed because his employer concluded that he had disseminated off-color e-mails in violation of clearly-announced company policy. He has supplied absolutely no evidence that this was pretextual.").[13]

---

[13] Even assuming *arguendo* that plaintiff's retaliation claim is based on the complaints

## B. Review of the MSPB Decision

Pursuant to 5 U.S.C. § 7703, the MSPB's decision must be upheld unless the decision was:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
> (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c)(1)-(3); *see U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6 (2001) ("The Federal Circuit's statutory review of the substance of Board decisions is limited to determining whether they are unsupported by substantial evidence or are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (quotation marks omitted). Here, plaintiff argues that the ALJ's decision is "arbitrary" in that it "rests on evidence which the defendant failed to considered [sic]," that "the evidence relied upon by the MSPB to sustain the removal of the plaintiff lacks sufficient reliability," and that the MSPB "sustained the removal of the plaintiff on charges different than [sic] those raised by the defendant." (Pl.'s Reply Mem. at 2.) For the reasons set forth below, the Court rejects all of plaintiff's objections to the MSPB's decision and upholds this decision pursuant to Section 7703.

### (1) Scope of Review

"The scope of our review in an appeal from a decision of the Board is limited." *Eck v. U.S. Postal Serv.*, No. 2007-3303, 2008 U.S. App. LEXIS 749, at *4 (Fed. Cir. Jan. 14, 2008); *see also Dey v. Nuclear Regulatory Comm'n*, No. 2007-3308, 2008 U.S. App. LEXIS 750, at *2 (Fed. Cir. Jan. 14, 2008) ("Our scope of review in an appeal from a decision of the Board is limited."); *Murray*, 821 F. Supp. at 108 ("[J]udicial review of MSPB decisions that do not involving [sic] discrimination claims is 'narrowly confined' and based exclusively on the administrative record.") (quoting *Fineman v. U.S. Postal Serv.*, 555 F. Supp. 1336, 1341 (S.D.N.Y. 1983)).

Specifically, "[l]ike its counterpart in the Administrative Procedure Act, 5 U.S.C. § 706(2), the arbitrary and capricious standard is extremely narrow, and allows the Board wide latitude in fulfilling its obligation to review agency disciplinary actions. It is not for the [court] to substitute its own judgment for that of the Board. The role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." *U.S. Postal Serv.*, 534 U.S. at 6-7

---

against Mirone, the Court finds that no reasonable trier of fact could find that Marro was terminated in retaliation for these complaints. As a threshold matter, is undisputed that Schuster, and not Mirone, terminated plaintiff. The record contains no evidence that Mirone initiated the investigation that led to this termination; indeed, when defendant's counsel asked Marro at the MSPB hearing whether he was aware of any evidence that Mirone (or, indeed, Schuster) instigated this investigation, Marro could provide none. (Hearing Tr. at 296.) Further, the Court rejects plaintiff's claim that Schuster somehow "used Ms. Mirone" to retaliate against Marro. (*See* Marro Dep. at 86-89.) Other than Marro's vague and conclusory statements regarding purported "briefings" of Mirone that plaintiff assumes took place, the record is devoid of any evidence that Schuster "used" Mirone in this way. Moreover, as to Mirone, there is no evidence from which a reasonable jury could find retaliatory motive in connection with her recommendation of termination with respect to the inappropriate material on plaintiff's computer system. In sum, no material question of fact remains regarding Mirone's motives or role in Marro's termination that would defeat defendant's motion for summary judgment.

17

(citations omitted); *see also Caswell v. Dep't of Homeland Sec.*, No. 2007-3253, 2007 U.S. App. LEXIS 28398, at *2-*3 (Fed. Cir. Dec. 7, 2007) ("We must affirm the final decision of the board unless we conclude that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."); *Williams v. McCausland*, Nos. 90 Civ. 7563, 91 Civ. 7281 (RWS) (THK), 1995 U.S. Dist. LEXIS 13341, at *48 (S.D.N.Y. Sept. 15, 1005), *aff'd* Nos. 90 Civ. 7563, 91 Civ. 7281, 1996 U.S. Dist. LEXIS 1124 (S.D.N.Y. Feb. 2, 1996) ("The 'abuse of discretion' standard requires only that the MSPB's decision have a rational basis in law.") (collecting cases); *Murray*, 821 F. Supp. at 108 ("'[The r]eviewing court discharges its duty by determining 'whether the contested decision complies with the applicable statute and regulations and whether it has a rational basis supported by substantial evidence from the record taken as a whole. The record need only disclose such relevant evidence as might be accepted by a reasonable mind as adequate to support the conclusion reached.'") (quoting *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984)).

### (2) The MSPB Decision

In order to prevail on an appeal to the MSPB, "an agency must establish three justifications for taking an adverse action against an employee. First, it must prove by preponderant evidence that the charged conduct occurred. 5 U.S.C. § 7701(c)(1)(B)(2000). Second, it must establish a nexus between that conduct and the efficiency of service. 5 U.S.C. § 7513(a)(2000). Third, it must demonstrate that the penalty imposed was reasonable." *Davis v. U.S. Postal Serv.*, No. 2007-3255, 2007 U.S. App. LEXIS 28476, at *3 (Fed. Cir. Dec. 10, 2007); *see also Lair v. Dep't of Homeland Sec.*, No. 2007-3147, 2007 U.S. App. LEXIS 29077, at *2-*3 (Fed. Cir. Dec. 14, 2007) (listing same factors as *Davis*). Further, with respect to proving the charges themselves, "an agency is required to prove only the essence of

its charge, and need not prove each factual specification in support of its charge." *Aiu v. Dep't of Justice*, No. SE-0752-95-0087-I-1, 1996 MSPB LEXIS 507, at *15 (1996), *aff'd* 98 F.3d 1359 (Fed. Cir. 1996). As set forth below, after careful examination of the administrative record, the Court finds that the VA met all three prongs of this test.

#### a. The Charged Conduct

For the reasons set forth below, according to the deferential standard of review afforded to MSPB decisions, the Court finds that the ALJ's decision that the VA proved the charges against Marro by a preponderance of the evidence was supported by substantial evidence; was reached through the proper procedures according to law; and was not arbitrary, capricious, or an abuse of discretion.

In particular, the ALJ concluded:

> Based on the testimony of the witnesses, I find that the agency has established that the appellant's e-mail account was correctly extracted from the server and that it was in fact his e-mail inbox and outbox that were copied and the dates on the e-mails go back several years. I also find that the material taken from his e-mail account is in violation of the agency's policies regarding the use of the agency's computer system. I further find that the appellant was clearly on notice of what would be considered inappropriate use of the computer system. . . . In addition, I find that the appellant's denials and explanations are incredible.

Considering the record as a whole, I find that the agency has met its burden of proof with regard to the merged charge of inappropriate use of the agency's computer system.

(Initial Order at 10-11.) As her Initial Order illustrates, the ALJ based this decision not only on the various documentary evidence the parties put into evidence, but also on two days of hearing testimony from various witnesses – including not only plaintiff himself, but a computer forensics expert plaintiff proffered. (*See, e.g.,* Hearing Tr. at 26-85 (reflecting testimony of Robert Ziskin, the Chief of the Information Resources Management Service at the VA); *id.* at 85-132 (reflecting Schemitz's testimony); *id.* at 135-56 (reflecting Mirone's testimony); *id.* at 157-90 (reflecting Schuster's testimony); *id.* at 196-308 (reflecting testimony of plaintiff); *id.* at 309-12 (reflecting testimony of Calvin Gordon ("Gordon") an Information Technology Specialist at the VA); *id.* at 313-31 (reflecting testimony of Daniel Kalai, plaintiff's electronic forensics expert)). Both the breadth and the substance of the record before the ALJ belies any conclusion that her decision was arbitrary and capricious. As set forth below, in light of that extensive record, the Court rejects each of plaintiff's objections to the MSPB's decision.

### 1. Exhibit 4T

The ALJ relied in part on Exhibit 4T in arriving at her decision to uphold plaintiff's termination. (*See* Initial Order at 4-11.) Exhibit 4T consists of two large binders containing approximately 600 pages of email and 31 compact disks, (Exh. 4T), and is the material defendant alleges that plaintiff received, opened, or forwarded in violation of VA policy. Specifically, the ALJ held:

The record shows that of the approximately 529 pages of

accumulated e-mail, there are approximately 167 e-mail messages, 90 of which do not appear to be forwarded to anyone but addressed to the appellant's agency e-mail address, and approximately 48 e-mail messages which are not business-related, but may possibly be considered sexually explicit. This leaves approximately 119 e-mail messages containing sexually explicit material. The record also contains the CD with 30 videos which are unquestionably sexually explicit.

(Initial Order at 9.)

Marro's primary argument on the instant appeal regarding Exhibit 4T is that it was not properly authenticated. In other words, plaintiff disputes the accuracy and reliability of the electronic extraction process and, therefore, disputes that the material contained in Exhibit 4T came from his email account. (*See* Pl.'s Response Mem. at 15-19.) However, as set forth below, the Court's review of the administrative record shows that the ALJ carefully considered the origin and admissibility of Exhibit 4T, both from a factual and legal standpoint, and properly concluded that Exhibit 4T was admissible and probative evidence.

"An AJ possesses significant discretion to determine what evidence he or she will permit to be presented." *Lair*, 2007 U.S. App. LEXIS 29077, at *5 (finding no abuse of discretion in ALJ's admission of hearsay evidence); *see also Williams*, 1995 U.S. Dist. LEXIS 13341, at *49 ("[F]ormal rules of evidence do not apply to MSPB proceedings, and the ALJ has considerable discretion regarding the admissibility and weight of

evidence."); *O'Leary v. Office of Personnel Mgmt.*, No. 04-3466, 2005 U.S. App. LEXIS 16640, at *10 (Fed. Cir. Aug. 9, 2005) ("In such a hearing, of course, the administrative judge retains broad discretion over the range of admissible evidence.").

In particular, "the Board's determinations regarding witness credibility are virtually unreviewable, since the determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." *Davis*, 2007 U.S. App. LEXIS 28476, at *5 (citations and quotation marks omitted); *see also Eck,* 2008 U.S. App. LEXIS 749, at *5 ([C]redibility determinations also fall within the AJ's discretion and are 'virtually unreviewable on appeal.'") (quoting *Frey v. DOL*, 359 F.3d 1355, 1361 (Fed. Cir. 2004)) (internal citation and quotation marks omitted); *Ng v. Dep't of the Treasury*, No. 2007-3301, 2008 U.S. App. LEXIS 2704, at *4 (Fed. Cir. Feb. 7, 2008) ("Determinations as to the credibility of witnesses . . . as well as the factual findings thereon, are accorded great deference by this court."); *Caswell*, 2007 U.S. App. LEXIS 28398, at *3 ("The board's fact finding function is benefitted by the opportunity to hear live testimony and assess witness demeanor and credibility first-hand."); *Mack v. U.S. Postal Serv.*, No. 92-CV-0068, 1998 U.S. Dist. LEXIS 13480, at *22 (E.D.N.Y. Aug. 26, 1998) ("Determinations of witness credibility are left to the MSPB.").

Here, as a threshold matter, the administrative record shows that the ALJ afforded plaintiff a full and fair opportunity to provide factual and legal argument regarding Exhibit 4T's admissibility. For instance, the origin and reliability of the contents of Exhibit 4T was the subject of pre-hearing motion practice. (*See* Marro's motion *in limine* to exclude Exhibit 4T, dated Aug. 2, 2006.) Further, at the start of the hearing, the ALJ offered plaintiff and defendant an opportunity to

provide oral argument on this issue. (*See* Hearing Tr. at 13:6-17:17.) Prior to taking testimony at the hearing, the ALJ denied plaintiff's motion, but explained that defendant would bear the burden of authenticating the material through testimony. (*See* Hearing Tr. at 17:23-18:24.) Finally, in the Initial Order, after hearing testimony from several witnesses, including a computer forensics expert plaintiff proffered, the ALJ found that the VA had met its burden of proof with regard to Exhibit 4T. (*See* Initial Order at 10.)

Specifically, in arriving at this conclusion, the ALJ considered, *inter alia*, the evidence set forth below.

In addition, the ALJ considered the deposition testimony of William Cruz, the System Administrator in Brooklyn who extracted Marro's email from the VA's backup tapes. At Cruz's deposition, he described in detail the steps by which he retrieved the material that would ultimately comprise Exhibit 4T. In particular, Cruz explained how he retrieved the entire contents of Marro's email box through searching the VA's backup tapes. (*See* Cruz Depo. at 16-17.)[14]

---

[14] At oral argument, Marro's counsel attempted to call Cruz's method into question by pointing out that he created four files of email in the course of his search, rather than only one file. However, plaintiff's counsel clearly elicited the origin of these multiple files from Cruz at his deposition. Specifically, in response to counsel's inquiry, Cruz stated that in order to retrieve Marro's full email box from the VA's backup tapes, he created a separate file for each relevant time period, corresponding to a particular backup tape. For instance, one file contained email backed up on the VA's system as of September 2005, while another file contained email backed up on the VA's system as of October 2005. (Cruz Depo. at 22-23; 27-28.) Plaintiff's counsel failed to

Further, the ALJ considered the testimony of plaintiff's own computer forensics expert, Daniel Kalai ("Kalai"). (*See* Initial Order at 6-7.) At the hearing, Kalai testified that he had reviewed Cruz's deposition testimony, (Hearing Tr. at 316), and affirmed his own familiarity with all of the software relevant to the extraction process Cruz undertook. (Hearing Tr. at 316-19.) Kalai stated that it was possible for email to be fabricated or altered, including email located on backup tapes. (Hearing Tr. at 319-21.) However, upon cross-examination by the VA, Kalai testified:

> Q: When you looked at Mr. Cruz's deposition did you also review the extraction process he went through in his backup from extracting it from the system?
> A: Yes.
> Q: Any problems with that?
> A: No.
> Q: So he did extract it correctly?
> A: Yes.
>
> ***
>
> Q: Okay, do you know what [sic] anyone could have fabricated e-mail the way you described at the VA?
> A: No.
>
> ***
>
> Q: [D]o you know whether the VA system allow [sic] what you describe, in terms of fabrication?

> A: No.
> Q: And you haven't reviewed the e-mails in this particular case, correct?
> A: No.
> Q: All right. To determine whether or not there was any fabrication or changes of dates?
> A: No.

(Hearing Tr. at 325-36, 327.)

Further, the ALJ considered the testimony of plaintiff. At the hearing, Marro testified that prior to receiving a copy of Exhibit 4T as part of an "evidence file" in conjunction with his removal proceedings, he had never seen the material contained in Exhibit 4T. (*Id.* at 210:16-20.) He testified that none of the emails contained in Exhibit 4T came from his email account at the VA. (*Id.* at 269:24-25, 270:1-2.) He said that he never received, viewed, or transmitted sexually explicit material on VA computer systems. (*Id.* at 276:2-5.) For instance, when counsel for defendant showed plaintiff an email from Exhibit 4T that appeared to be from Marro to Nieves, plaintiff stated that someone else had sent the email to Nieves using Marro's name. (*Id.* at 282:5-7.) When counsel for defendant showed plaintiff an email from Exhibit 4T that appeared to be from Marro's personal email address to his VA email address, plaintiff stated that he did not send the email. (*Id.* at 285:23.) Although plaintiff appeared to take ownership of certain of the emails, counsel and the ALJ agreed at the hearing that Marro need not point to which emails he admitted to writing. (*Id.* at 307.)

Plaintiff further stated that the material contained in Exhibit 4T was attributable to a "security breach." (*Id.* at 297:1-13.) He stated that the computer people at the VA changed his computer password two or three

---

identify any aspect of this process that would raise a suspicion about the authenticity of the emails extracted and, moreover, could not identify any additional steps that Cruz – or any other VA employee involved in the email extraction process – should have taken in order to ensure the emails' authenticity.

times without his knowledge. (*Id.* at 301:16-21.) He stated that certain of the emails contained in 4T were "tampered" with through the addition of words that Marro did not write. (*Id.* at 306.) Marro testified that "many, many times I had noticed that I would create files [on his VA computer] and a week or two later, when I was away, I would come back in the computer and those files were no longer there." (*Id.* at 211:15-18.) Plaintiff stated that he reported this problem to other employees of the VA, including Robert Ziskin. (*Id.* at 212:17-23; 213:4-23.)[15]

Moreover, in assessing the admissibility and probative value of Exhibit 4T, the ALJ considered the testimony of Ziskin. (*See* Initial Order at 5-6.) Specifically, Ziskin testified that Schemitz enlisted his help for the investigation. (Hearing Tr. at 37.) Because Ziskin had "limited access" to extract employees' email, he contacted Cruz. (*Id.* at 37-38.) Cruz placed the contents of Marro's email onto the VA-Northport server, and Ziskin trained Schemitz and Romano to access the email. (*Id.* at 44.) In particular, Ziskin instructed Schemitz to view Marro's email from a folder located on Schemitz's email account. (*Id.* at 48.) Hence, Schemitz's name appears on printouts of Marro's email. (*Id.*)

The ALJ also considered the testimony of Schemitz. (*See* Initial Order at 4-5.) Schemitz's testimony was substantively consistent with that of Ziskin and Cruz, although Schemitz also explained that he provided material from plaintiff's email account that he found to be sexually explicit to Human Resources. (Hearing Tr. at 94.) This material comprises Exhibit 4T. (*Id.* at 93.) Schemitz provided examples to the ALJ of the sexually explicit material contained in this exhibit. (*Id.* at 96-97.) He noted that while some of Exhibit 4T may have come from the email box of Nieves, such material was forwarded from Marro. (*Id.* at 122.)

After careful review of the administrative record – including the deposition and hearing testimony of plaintiff and the testimony of plaintiff's own computer forensics expert – the Court concludes that the ALJ's ruling regarding the admissibility and probative value of Exhibit 4T was supported by substantial evidence, and was not arbitrary, capricious, or contrary to the law. *See Winters v. Dep't of the Navy*, No. 2007-3106, 2007 U.S. App. LEXIS 16416, at *4-*5 (Fed. Cir. July 11, 2005) ("[Plaintiff] also claims the Board erred when it allowed the agency to submit an excerpt from his deposition that was not 'self-authenticating'. . . . These evidentiary rulings, however, fall within an administrative judge's discretion.").

In sum, taking into account the wide latitude afforded to the ALJ in admitting evidence and assessing witness credibility, as well as the standard of review set forth in Section 7703, the Court upholds the ALJ's holding that the VA proved the charges against plaintiff by a preponderance of the evidence. *See Reynolds v. Dep't of the Army*, No. 05-3025, 2005 U.S. App. LEXIS 8608, at *3-*6 (Fed. Cir. May 13, 2005) (upholding MSPB decision affirming plaintiff's termination for, *inter alia*, accessing "pornographic web sites and engag[ing] in

---

[15] The Court notes that the ALJ explicitly discredited plaintiff's testimony. She found, *inter alia*, that it was "unclear on certain points and inconsistent with the record." (Initial Order at 9.) She concluded, for instance, that "[T]here is no support in the record for the appellant's contention that he did not know where the e-mails came from or that alternatively the e-mails were altered by some unknown person. The e-mails are addressed to him, and some are from his private e-mail address to his agency e-mail address. . . . His explanation that computers do strange things is highly improbable." (*Id.* at 10.) In light of the particular deference the Court must show the ALJ's credibility determinations and given the evidence described above, the Court finds no basis for disturbing her rejection of plaintiff's testimony.

improper personal communications"). In particular, the Court notes the following findings of the ALJ: (1) many of the e-mails and all of the videos contained in Exhibit 4T are sexually-explicit, including email sent from plaintiff's personal email account to his VA email account; (2) the contents of Exhibit 4T were properly extracted from the VA's backup tapes, and not only was no credible evidence presented to suggest otherwise, but plaintiff's own computer forensics expert affirmatively agreed that the extraction process was performed correctly; and (3) Marro's testimony disavowing knowledge of virtually all of the emails contained in Exhibit 4T was incredible.[16]

### 2. Marro's Notice that the Charged Conduct Was Prohibited

In addition, in determining that the VA had proven the charges against plaintiff, the ALJ determined that Marro "was clearly on notice of what would be considered inappropriate use of the computer system." (Initial Order at 10.) For instance, the ALJ noted that Marro signed the VA's Rules of Behavior for VISTA and PC LAN, which prohibits the conduct alleged in the charges. (Exhibits 4R-4R1.) She also relied on Marro's Training Record from the VA, which indicates that he received training in cyber-security on December 21, 2005. (See Exhibit 4(I)(i).)

At the hearing, Marro stated that the signature on the Rules of Behavior was his, but that he could not remember signing it. (Hearing Tr. at 259:10-11.) Relatedly, Marro also testified that he did not receive training in cyber-security other than to review material for approximately 10 minutes (Hearing Tr. at 263:15-19.)[17] For the reasons stated supra, however, the ALJ did not credit plaintiff's testimony and, instead, found that he was on notice that the charged conduct would violate the VA's policies. (See Initial Order at 10-11.)

---

[16] The Court also rejects the remainder of plaintiff's arguments regarding the charges. First, the Court rejects Marro's argument that the ALJ sustained charges against plaintiff that were different from those for which he was terminated. (Pl.'s Mem. at 19-24.) As stated supra, the VA need only have proven the "essence" of the charges against Marro, which the ALJ articulated as "inappropriate use of the agency's computer system." (Initial Order at 3.) Because, as also discussed supra, the ALJ found that the VA had made a detailed showing of the nature and origin of Exhibit 4T, including particular emails therein, her finding that Marro inappropriately used the VA's computer system can hardly be considered arbitrary or capricious. Further, the Court rejects plaintiff's objection relating to Mirone's and Schuster's failure to review Exhibit 4T prior to terminating Marro. As the ALJ noted in her decision, (see Initial Order at 5), Schemitz informed both Human Resources and Mirone of the sexually explicit nature of Exhibit 4T prior to the VA's lodging the charges. Plaintiff has provided no case law to suggest that Marro's supervisor and the Human Resources department were not entitled to rely on the description of Exhibit 4T provided by the police officer leading the investigation against Marro. In any case, plaintiff does not contest that at least part of Exhibit 4T "might be termed sexually explicit," (Pl.'s Mem. at 8), so the Court cannot discern any prejudice plaintiff may have suffered from Mirone's and Schuster's failure to personally review Exhibit 4T. Moreover, Mirone and Schuster also relied on the "Summary and Recommendations:

---

Proposed Removal: Anthony Marro, Budge Analyst" (the "Summary and Recommendations"), dated March 23, 2006, prepared by Arthur Cheeseman ("Cheeseman"), the Chief of the Human Resources Management Service at the VA, in arriving at the decision to terminate plaintiff. (Exhibit 4D.) Thus, Exhibit 4T comprised only one part of the evidentiary picture before the VA when it lodged the charges against plaintiff.

[17] Notably, though, when counsel for defendant showed plaintiff various emails contained in Exhibit 4T, Marro agreed that they would violate VA policy. (See, e.g., id. at 274:21-25; 275:1.)

The Court has carefully reviewed the administrative record, including the Rules of Behavior, Marro's training record, and his hearing and deposition testimony, and finds that the ALJ's conclusion regarding Marro's notice of the charged conduct was supported by substantial evidence, and was not arbitrary, capricious, or contrary to the law.

### b. Nexus Between Charged Conduct and Efficiency of the Service

For the reasons set forth below, applying the deferential standard of review applicable here, the Court finds that the ALJ's ruling that the VA established a nexus between that conduct and the efficiency of service, pursuant to 5 U.S.C. § 7513(a)(2000), was supported by substantial evidence, and was not arbitrary, capricious, or contrary to the law.

In order to show this nexus, the VA "had to demonstrate only that [Marro] violated norms of conduct for [his] position, such that the agency's action promotes the efficiency of the service." *Chambers v. Dep't of the Interior*, No. 2007-3050, 2008 U.S. App. LEXIS 3161, at *16 (Fed. Cir. Feb. 14, 2008). In holding that the VA made such a demonstration, the ALJ held:

> Here, the sustained charge raises questions about the appellant's judgment and relates to his ability to properly perform his duties. The appellant used his agency e-mail account, the agency's computer system in a manner clearly inconsistent with his duties and responsibilities by accepting and forwarding inappropriate material. This behavior displays a lack of good judgment.

(Initial Order at 15.) Under the circumstances of this case, and considering the administrative record as a whole, the Court finds that this conclusion was supported by substantial evidence, and was not arbitrary, capricious, or contrary to the law. Indeed, plaintiff does not appear to dispute that commission of the charges would violate the norms of conduct for his position. Instead, plaintiff points out, through citation to plaintiff's performance reviews and various letters of commendation, that he performed satisfactorily in his position during the time period in question. (Pl.'s Mem. at 11; Exhs. A-C, W, AE, AG, AL-AO.) The Court is aware that "[t]o establish a nexus between the employee's misconduct and the 'efficiency of the service,' an agency must show that the misconduct adversely affects the job performance of the employee or his coworkers." *Murray*, 821 F. Supp. at 109. However, even assuming *arguendo* that plaintiff's job performance was as satisfactory as plaintiff claims, the Second Circuit has stated that "where an employee's misconduct is in conflict with the mission of the agency, dismissal without proof of a direct effect on the individual's job performance is permissible under the 'efficiency of the service standard.'" *Borsari v. Fed. Aviation Admin.*, 699 F.2d 106, 110 (2d Cir. 1983). Here, the Court does not find that the ALJ was arbitrary and capricious in finding that the transmission of inappropriate email displayed a lack of good judgment that is inconsistent with the mission of a public hospital, particularly in light of the VA's explicit prohibition on such transmissions. *Cf. Chambers*, 2008 U.S. App. LEXIS at *16 (finding nexus where no formal rule prohibited charged conduct).[18]

---

[18] The Court also wholly rejects Marro's other argument regarding the nexus between the charged conduct and the efficiency of the service, *i.e.,* that the quantity of inappropriate email plaintiff allegedly received was small in proportion to the amount of email he received daily. As Schuster stated in his testimony regarding the nexus issue: "[W]hen an employee

### c. The Penalty

For the reasons set forth below, the Court finds that the ALJ's ruling that the penalty imposed on Marro was reasonable – and did not reflect a punishment disparate from that of similarly situated employees – was supported by substantial evidence, and was not arbitrary, capricious, or contrary to the law.

"Our review of the penalty imposed by the agency is 'highly deferential.'" *Olson v. Dep't of Labor*, No. 02-3234, 2003 U.S. App. LEXIS 6203, at *8 (Fed. Cir. Mar. 31, 2003) (quoting *Webster v. Dep't of Army*, 911 F.2d 679, 698 (Fed. Cir. 1990)); *see also Murray*, 821 F. Supp. at 109 ("A reviewing court must 'defer to the judgment of the agency as to the appropriate penalty for employee misconduct, unless its severity appears totally unwarranted.'") (quoting *Krauthamer v. Block*, 587 F. Supp. 254, 257 (S.D.N.Y. 1984)).

In terms of the MSPB's review of the agency decision, and as the ALJ stated, "the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness." (Initial Order at 15.); *accord Singleton v. U.S. Postal Serv.*, No. 2007-3248, 2007 U.S. App. LEXIS 28338, at *4 (Fed. Cir. Dec. 6, 2007) (noting that "[i]n determining the reasonableness of a penalty imposed by an agency, the Board generally applies the twelve" factors enumerated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981)). After conducting this review, the ALJ found:

> Based on the evidence . . . I find that the circumstances here do not warrant disturbing the agency's penalty selection. The record shows that the appellant is a long-term employee with over 20 years of service. Such service, however, is insufficient to mitigate the selected penalty given the seriousness of the misconduct. The record shows that the appellant was clearly on notice of the agency's policies. Accordingly, given the nature of the sustained misconduct, coupled with its attendant circumstances, I conclude that the agency's penalty is within the range of reasonableness in this particular case.

(Initial Order at 18) (citation omitted).

The Court has reviewed the administrative record as a whole – applying the especially deferential standard of review afforded to the MSPB with respect to penalties – and concludes, for the reasons set forth below, that the ALJ's conclusion was supported by substantial evidence, and was not arbitrary, capricious, or contrary to the law.

---

reads email like this, forwarded – forwards emails like this, there's no question in my mind that they're – it's called theft of government services. He's obviously not working. He's obviously not doing government work. And he's not performing his duties within the confines of what's considered personal use of governmental computer equipment. That's not the intended use, to look into pornographic material." (Hearing Tr. at 164.) The fact that plaintiff may have received many appropriate emails during the course of the day does not provide a basis for disturbing the ALJ's ruling that Marro's inappropriate use of his email account was inconsistent with his duties and responsibilities at the VA.

Specifically, as the ALJ noted, the record contains a checklist of the *Douglas* factors, which Schuster executed on March 23, 2006. (Exh. 4C-4C1.) Moreover, at the hearing, Schuster testified in detail regarding the certain of the factors he weighed in determining to terminate Marro, including plaintiff's prior training regarding inappropriate email and years of service at the VA. (Hearing Tr. at 162-64.)

"When the MSPB is satisfied that all relevant factors have been considered by the agency and there has been a responsible balancing of those factors, as occurred here, that ends the matter." *Murray*, 821 F. Supp. at 109 (quoting *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1540 (Fed. Cir. 1984); *Davis v. U.S. Postal Serv.*, No. 2007-3255, 2007 U.S. App. LEXIS 28476, at *6 (Fed. Cir. Dec. 10, 2007) ("[T]his court will not disturb an agency penalty unless it is outrageously disproportionate to the offense, and it is not reversible error if the Board fails expressly to discuss all of the *Douglas* factors. The Board need only determine that the agency considered the factors significant to the particular case.") (citations and quotation marks omitted). Here, the record shows that the ALJ was satisfied that Schuster considered all of the *Douglas* factors, and that Schuster testified before the ALJ regarding the particular way in which he balanced certain of these factors. In short, the Court finds no basis to disturb the ALJ's decision regarding Marro's penalty.[19]

---

[19] Moreover, for the reasons discussed *supra* with respect to plaintiff's claim of disparate treatment in connection with his cause of action under Title VII, the Court will not set aside the MSPB's holding that Marro's penalty was not disparate from that of other, allegedly similarly-situated employees. The ALJ's reasoning is consistent with that of the Court regarding Marro's Title VII claim, and the ALJ considered the same evidence as did the Court in arriving at her conclusion. (*See* Initial Order at 16-17.)

## V. Conclusion

For the reasons set forth above, the Court grants summary judgment to defendant on plaintiff's Title VII claim. Further, the Court grants summary judgment to defendant on plaintiff's MSPB claims under Section 7703 and, thus, upholds the MSPB's decision regarding plaintiff's removal. Plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court is ordered to enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 12, 2008
Central Islip, NY

* * *

Plaintiff is represented by David M. Lira, Esq., 525 Stewart Avenue, Suite 510, Garden City, New York, 11530. Defendant is represented by Diane Leonardo Beckmann of the United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Fifth Floor, Central Islip, New York, 11722.